When you're ready, Counsel. Thank you, Your Honor. May it please the Court, I am James Wagstaff, appearing on behalf of Appellant Central Garden and Pet Company. I would attempt to reserve four minutes for rebuttal, but I'll go with the Court's questions. This case raises a very straightforward issue, and the issue is whether the judgment entered in Ohio on state contract and fraud claims serves as a bar under claims preclusion to the separately filed California antitrust claims that included an additional party and that, as we will see, were predicated on different facts and different time periods. The question is, do we have res judicata simply because there's an overlap of some damages and witnesses, and the answer under the case law and the answer under the right to have this antitrust conspiracy addressed is no. We start by looking at the prism through which we must analyze this issue. The Supreme Court has told us that res judicata is a drastic remedy that must be looked at carefully with careful inquiry. Doubts resolved against preclusion. This Court has said on multiple occasions that you cannot look at the issue with a level of generality of the two claims, and in particular, you must narrowly construe res judicata, which then, of course, brings us to the issue, really, which is claim preclusion applies only if there is an identity of claims. That's the language from this Court in Frank. It is the language from the Ohio Court in Wagner. It's the same cause of action, the same transaction. Aren't we dealing really with this Section 24, the second restatement test? Isn't that the Ohio? We are, Your Honor. And it's the same case. That doesn't say same claim, does it? It says the same transaction or occurrence. Your Honor's decision for the Ninth Circuit, of course, in the Frank case, the Frank case, which was Ninth Circuit rendered just two and a half years ago, uses the phrase identity of claims. But it's the same test. Is it the same transaction or occurrence, not looking at it at a level of generality? Well, I can think of all kinds of things. There are claims not asserted that get barred if they're from the same transaction or occurrence. They do, Your Honor. The res judicata, the claims preclusion does preclude claims that could have been brought as long as they arise out of the same transaction or occurrence. Right. But they obviously aren't the same claim if they weren't brought. Well, that's yes, Your Honor, and no, if I might. The word claim has a technical meaning under the restatement as to what a cause of action is. It does not mean just a different label. That could be the same claim. It defines cause of action as the same transaction or occurrence, that is, the identity or the sameness of the claim. So when we're looking at that, I will bring back my old journalism background and say we should ask some questions. We should ask the question who, when, what, where, and why. If we could, start with the who. Because when we're looking at the identity or sameness of the claims, we ask ourselves, we look at the parties, we look at the transactions, we look at the nature of the evidence. The Ohio claim was only Scotts and Central. Monsanto was not a party and was specifically excluded from being a party pursuant to a 12b-7 motion that was denied. In the antitrust claim. Excuse me. Can I interrupt? Yes. At what point was that 12b-6 motion denied? Was that before or after your client put in the counterclaim? It was a 12b-7 motion, Your Honor, and it was denied before the counterclaims came in. And the issue is what's the consequence of the counterclaims? So that earlier motion was denied on the ground irrelevant to the question we now have in front of us. I don't think it's entirely irrelevant, Your Honor, because it talks about the combination of parties. But let me say this. In the California case, again, when the issue was raised of are Central and Monsanto critical figures, the opposing side said that Central does not figure a wit in the antitrust claims. They're not a complete overlap of the parties is all I'm getting at. Your Honor, if we look at the Ohio case, and I direct the Court's attention particularly to the record, excerpt of record 228 through 230. I think that's a very important read. Because in that excerpt of record, Your Honor, you will see that when the Court was ruling in Ohio upon the motion for summary judgment of the fraud claim, one of the factors that's considered when it decided not to look at certain evidence as it being immaterial for summary judgment was that Monsanto was not even a party to that case. That's after the counterclaims were brought, Your Honor. If you look at that part of the record, you'll see that Judge Sargis, when ruling upon the, if you will, the viability on summary judgment of the promissory fraud claim, rejected as immaterial evidence of the subsequent agreements because he accepted, frankly, as a matter of law, the view set forth by Scotts that it was a different deal. That, in fact, they said it was neither contemplated, it was not within the contemplation of the parties when they entered into the contracts, this separate deal. He excluded that evidence as immaterial. Perhaps even more significantly, Your Honors, he excluded as immaterial when analyzing the fraud claim, he excluded as immaterial the financially crippled central evidence on pages 228 and 299. He said, or any acts of Monsanto, not only because Monsanto is not a party, but because it's not material to determine what's going on in the, in this case. I submit, Your Honor, that you cannot in one court say evidence is immaterial. Where does it say it's not material? What he says – I understand that it says, defines the assertion speculative, Monsanto is not a party, there's no evidence that would support the assertion. I'm – It says on page 229, the bottom of the paragraph, he says it does not give rise to a genuine issue of material fact. And I think if you would, if we're looking at 56 – Oh, but that's a different question. He's just stating the summary judgment rule. He's not saying that the evidence is immaterial. He's just saying there is no evidence here that gives rise to a genuine issue of material fact. He's saying – that's right, material fact. And he's saying, Your Honor – And he's basically saying your party has simply not chosen to put in any evidence with respect to Monsanto. That was your client's choice. No, Your Honor, it wasn't our client's choice, if I might. Our client did put in evidence. The very evidence they say now is overlapping. Our clients put in evidence of the crippled Monsanto. They say that's overlapping. I'm highlighting that Judge Sargas, on pages 228 through 230, said it was not only a different deal, don't tell me about that deal. It was also, if I might, Your Honor, evidence that says that it wasn't material to determining whether the fraud cause of action had a basis. It then goes on to say, Your Honor, that evidence that supposedly is overlapping in Ohio was not considered as sufficient to support summary judgment. The evidence was submitted to the court, Your Honor, and the court said that's not enough. And by the way, Mr. Hagedorn said it's a different deal. And so in this case, Your Honor, we not only have different parties, we also have different facts. The what? The when is not overlapping. The contract and the fraud claims have their genesis in April of 98. The promissory fraud claim is the present state of mind has ripened at that moment, and it causes damages to my client. In addition to the destruction of their business, it also causes damages because they did not seek other entrance to the market. Therefore, they relied on the promise. But if you will, Your Honor, that occurs the moment the promise is broken, the moment the promise is made without intention to reform. The contract claim, Your Honor, ripens no later than August of 1998 when Mr. Hagedorn says, when asked are we going to go forward, he says, no, it's a different deal. That's an anticipatory breach. Now let's ask ourselves when the antitrust claim has its genesis. Well, while some of it overlaps earlier, the origin of the finalization of the first agreement, the roundup agreement, is not until September 30th. The ortho acquisition agreement, not until November 11th. The ISA, the IPA SALT agreement, not until the following year. The disposal of finale, not until the following year. And ongoing because the steering committee meets annually. So if you will, and I think perhaps I hope this is helpful. It's the product of my 15-year-old, so forgive it, who's taking geometry. Really res judicata is like a Venn diagram, two overlapping sets and how much they overlap. And if you have all this evidence, all this time period evidence that does not relate to the contract and antitrust claim, Your Honors, then of course we don't have a sufficient overlap to preclude my client. Which brings us really to the what? Which is the evidence itself. The evidence in the Ohio case dealt with a supposed joint venture with respect to these products. They were sharing the benefits. There was a breach of the promise allegedly because you didn't intend to reform. That is to be contrasted in our Venn diagram analysis with the rather pervasive evidence of agreements ongoing for many years and thereafter as to the monopolization of the nonselective herbicide market. Yeah, now let me make, let me see if I can bring this down to earth a little bit. The counterclaims brought in the Ohio action allege breach by Scott. And as I understand it, the agreement was that Scott and Central Garden were to share in any contract that either Scott or Central Garden entered into with Monsanto. Correct, Your Honor. And it turns out that Scott enters into a contract with Monsanto and then according to the counterclaim doesn't share with Central Garden in the way that it had promised to do. That's correct, Your Honor. And isn't that contract between Scott and Monsanto that Central Garden wants into, isn't that very contract between Scott and Monsanto the foundation and premise for the antitrust suit? The contract is only in part, Your Honor, if I might. It's one rock on the pile. But it would be, with all due respect, a rather narrow view of the overall evidence to say it was, in fact, because we have subsequent agreements. Well, let me state it this way as clearly as I can. What is the nub of the antitrust action then here in the Federal District Court? It is that there's a monopolization of the domestic market for the nonselective herbicides. Between the monopolization by Scott and Monsanto? That's correct, Your Honor. And the nub of that is this contract between them with respect to these products. That's one aspect of the nub, Your Honor. When you use the word nub, I want to emphasize what the case law says, the key facts. Let's look at the complaint in the antitrust action because that may help us narrow it down a little bit. Caused by the ortho acquisition and consumer marketing agreement. Okay, that's the agreement. I'm reading out a first claim. Second claim. Ortho acquisition and consumer roundup marketing agreement. Every claim talks about that agreement. That seems to me the centerpiece of every claim. No, Your Honor. May I? That's the pleadings. Yes, it is. That's right. It was a discovery. And, in fact, it talks about later steering committee meetings. It talks about eliminating Finale. It talks about taking steps to cripple. It talks about locking companies as a result of the Monsanto post-patent strategy. Right, but Knows of press contracting countries and saying, Do you have a prescription       We read it out because the compliance stops at Section 58, Res Judicata. Okay. Was the complaint ever amended? No, Your Honor, but as Your Honor well knows under Rule 16, the pretrial conference process sends it out. But furthermore, Your Honor, the suggestion of just the contract doesn't answer, if I might, the Res Judicata question. If you take a look at Colonial Pen, the case we cited in our brief from the Seventh Circuit, the mere fact that you may have separate wrongs that are connected through a single contract does absolutely not mean it is Res Judicata or claim preclusion. Because I can Here's the problem I have, and it may or may not be directly, I said, a Res Judicata question. In the Ohio suit, your client wants in on the contract. The very contract that it claims in the San Francisco lawsuit violates the intertrust laws. Your Honor, the answer to that is no. May I explain? Please. The answer is that that is not correct. The contract and fraud claims are not premised on the particular kind of agreement that's rendered. That's number one. Number two, the violation of the fraud cause of action occurs notwithstanding whatever the contract is, because that's a present state of mind, and as the evidence indicates, my client was seeking, said, once you tell us you're not in, we didn't do other things. That's independent of the contract. Furthermore, Your Honor, the contract claim itself, we have to remember that Judge Sargis said it's a different deal. Now, that has to mean something, Your Honor. If it's the same deal, then I understand the Venn diagram overlap. But it's a different deal. We cannot in Ohio be told you can't talk about that because it's a different deal. And then in California be told it's the same deal. But, Your Honor, if I might ---- It does sound, Mr. Wagstaff, a little bit like that line of case law, I think the Davis case comes to mind, involving the Oakland Raiders, where what your client is really saying is we're disappointed that we weren't admitted to this conspiracy, and now we've got an antitrust claim. And I do see an overlap if there is a ---- that's sort of what's really behind all this. Number one, Your Honor, I don't believe it's that case. Let me explain why. The damages that flow in a contract and fraud claim are predicated on a projection of the contract we are entitled to. We are not in any way suggesting that we are going to seek illegal damages as a result of that. In fact, Your Honor, as I've indicated, you can have sources of injury that are caused by the same contract. Aren't your $300 million in damages predicated on the fact that you didn't get the contract and, therefore, you weren't a member of the conspiracy?  Your Honor, they're predicated on the fact, if you read the declaration, they're predicated on the fact that there was a destruction of my client's distribution business. I'm not suggesting we can double recover, but there's other remedies to take care of that. I'm suggesting that in the contract and fraud claims, Your Honor, it is, in fact, they, by not going forward with the contract, they effectuated the destruction of our business. It is quite probable that, therefore, the antitrust claim in part or in large part was, in fact, also the destruction of the business from a different source. If you look at Colonial Penn, let me give you an example, Your Honor. Let us suppose that there's a pregnancy and there's an allegation the doctors failed to note that the pregnancy was probably screened and, therefore, genetic abnormalities. Let us suppose that a few months later, during the labor, the labor is mishandled and that they say that contributed to the abnormalities. That sounds like the same transaction. It is not. And I can give you, I was reading this last night, you can read a case. Sounds like it. But, in fact, it's different time periods, different witnesses, different sources of damages, even though it's overlapping. If you would read Ader v. Fallred, and I just, I apologize for reading this last night, 238 F sub 2nd 928, that's in Ohio. If Your Honor would read Colonial Penn, you see a transaction that's tied together, but the source of the damages is different. They say that's different. Your Honor, if I, can I abolish judicial immunity? You run me over today. A week from now, you run me over again. Those are clearly separate transactions. Same damages, same emotional stress, same doctors. No one in this Court would suggest that's the same transaction. Does this argument depend on your point that a fraud claim, the fraud lies in making a promise that you don't at that time mean to keep? It doesn't. That's one element, Your Honor. That's the law of Ohio, but that is one element. Well, that's true, but if you make a promise without the intention to keep it and then you go ahead and keep it, you don't have a cause of action. It seems to me that to complete your cause of action, you're going to have to have a breach down the line somewhere, not just some evil thoughts. Actually, Your Honor, the case law under the restatement is the opposite. You don't have to. If you go ahead and perform according to the contract, you can still sue because when you entered the contract, you didn't think you were going to perform. Your damages would be quite a bit different. It might be almost zero, but if you can demonstrate that you suffered damages. Almost. Yeah. They might be identical, Your Honor. I don't disagree with that. But the mere fact that issues overlap. Let me, just in my last moment if I could, Your Honor, I don't want to lose the waiver argument. I want to talk about that for a moment. The law is clear that you cannot just let two cases go forward and not raise the issue and get to the doorstep of trial. You have an obligation if you want to protect yourself against multiple claims from doing more than raising it as a boilerplate affirmative defense. You must raise it at the earliest opportunity. In this case. But this is an antitrust case, counsel, and, you know, we typically litigate, you know, before responsive pleadings are filed. I had one that took four years before I finally had to file an answer. This one may go past that one, Your Honor. You know what? I understand. That's not the question. I'm not suggesting they don't litigate a long time. I'm suggesting when you think of res judicata, and that when you have parallel actions you think of at the moment they're filed, you must raise it. The suggestion at this time is, well, we did raise it. We put it in affirmative defense. The affirmative defense in Ohio was insufficient. It was not only for functory, but it was like, Your Honor is well aware of the 12B3 venue. You can make a 12B3 venue attack as an affirmative defense. But the law says you can't wait until you get to trial to raise it. You must raise it in a timely fashion. This law is exactly the same for res judicata, to prevent, because it's designed to protect the defendant from multiple actions. If they're willing to live with multiple actions, they cannot wait until the doorstep of trial to raise it. In this case, Your Honor, at the case management conference in California, and look at the record, the issue of res judicata is not raised. I mean, not the conference, but the material submitted in the conference.  While that ripens the defense, it does not eliminate the need to raise it. For good reasons, Your Honor, because this is no way to run an airline in a federal court system. There are lots of doctrines that are designed to prevent this kind of balkanization. The first to file rule would be one example. The transfer of venue would be another example. The coordination of actions. And, in fact, Your Honor, if a defendant is going to come in and say, we have been prejudiced because there are these two cases, you say to one, imagine it, you say to one judge. The balkanization came, I mean, you've had an action that you're defending in Ohio, and you opened one up in California. It's not my burden, Your Honor, for number one. Listen, Your Honor, my view on behalf of my client is very strong. We think these are separate transactions. We did what we thought was appropriate. But putting that to one side, Your Honor, the law imposes the burden on the party who's seeking its protection. And we've set forth a good number of cases that say you cannot lie in wait and wait until it happens. So, Your Honor, and there's a reason why this makes sense in this case. It's not just because we spent several years litigating, and we could have avoided this by some form of agreed-upon work, that if you're going to complain about it, don't wait until the very last minute. That's the law. I guess the basis for my question was Judge Chesney's reference to the fact that it wasn't until the counterclaim was filed in the Ohio action. And the reason it took that long was because of all of the pre-answer litigation with regard to the 12b motions. Yes, but the counterclaim, Your Honor, was filed a year in advance of this being raised. I mean, I know a year doesn't seem long in antitrust litigation.  But it is long in terms of waiver, Your Honor. The law says raise at the earliest possible opportunity. And I posed the question, didn't I? And, of course, it can be raised in either of those two suits. Well, actually, Your Honor, there's an Ohio Supreme Court case which says no. And I can provide the citation. It must be raised in the suit in which you're seeking it. The restatement says the contrary. But I can provide the case, the Davis case. I'm not sure on the question of waiver. The Federal District Court in California has to follow Ohio law of waiver. It has to follow the substantive law of ratio decada. But waiver may be a question out here. Well, I'm very happy to live with the Ninth Circuit law on this point, Your Honor. That's for sure. But if that's the answer and it doesn't come jot for jot, as we say in civil procedure, then I'm thrilled with the Ninth Circuit rule on waiver. You know, you've run over. You asked to save some time. We'll give you a minute on rebuttal. Thank you, Your Honor.  Good morning, Your Honors. My name is Hal Barza. I represent the Scotts Company in this matter. I agree with opposing counsel that the issue in this case is whether or not, under Ohio law, the claims asserted in California arise out of the same transaction or series of transactions as the claims asserted in Ohio. And I would submit that the record clearly demonstrates that those claims do arise out of the same set of transactions. It was clear when the complaints were filed that that was the case. As the Court just noted, in the California case, the essence of the claim was that the Solaris transactions were an antitrust violation. And in the Ohio case, the essence of the claims were that the Solaris transactions were something Central was entitled to share in. Clearly, those claims relate directly. And we pointed that out at the first instance when those claims surfaced in our motion to dismiss them. Moreover, as these claims evolved before the two courts, they became more and more similar. And we also explained this in our briefs. As the evidence developed in support of each, and as Central pushed each claim forward in front of the courts before which it was pending, it made the claims mirror images of each other. In terms of the transactions, as I indicated, the Solaris transaction was the heart of it. In terms of the wrongful acts, in the antitrust case itself, Central alleged that one of the wrongful acts was this acquisition-sharing agreement that it asserted in Ohio. In terms of wrongful motive, in both cases, Central alleged that Scotts had set out to anti-competitively destroy it as a competitor. And in terms of damages, and I do want to speak to this briefly, Central alleged in both cases that by virtue of the motive created by the Solaris transaction, Scotts had terminated it as a distributor and destroyed its distribution business. In both cases, Central submitted the exact same expert report, seeking the exact same $300 million in damages. Now, there is something that was not clear from the briefs, and I apologize for that, that Judge Tolman asked about that I did want to point out. There was one additional damage claim in the Ohio case. All of the damages in the California case comprised the termination of the distribution business and the alleged destruction of it, and then a $17 million component for another product that was supposed to be distributed. Those exact same damages were also sought in Ohio. There was one other damage component in Ohio which Central sought, and that was the synergies and the value it claimed it would have received from being a part owner in the Solaris transactions. And that is in the record, the report of Mr. Booster, their expert. So clearly, these cases arrived from the exact same sets of transactions. Is the Section 2 claim in California still the same transaction as the Ohio? We've got a Section 2 monopolization claim. Yes, I believe it is, Your Honor. The claim is that the Solaris transaction was the blueprint for and the core of the alleged monopolization. Any other allegations in the antitrust case beyond the allegation of the alleged destruction of the business were not actually part of the antitrust claim. And the reason I say that is, as this Court knows, an antitrust claim requires damages. The only damages they sought, that are sought in a California antitrust claim, are the destruction of the business and a related component of distribution. So this noise about glyphosate supply contracts or price fixing and the like, they're not really part of the case in the sense they're not a component of a claim for which damages are being sought. They're noise, they're atmospherics. But the Section 2 claim was predicated entirely upon the allegation of the Solaris transaction and the alleged destruction of Central's business pursuant to it. I hope that's your response. Could you address the waiver point? Yes. Okay. First of all, the issue of waiver under the case that opposing counsel was citing to is a case that was decided before Grava. Under Ohio law, as interpreted by the Sixth Circuit and I believe State court cases as well, it is sufficient if you assert in either of the two actions the defense of race judicata and a simple assertion of that defense on its own is sufficient. The case is clearly established that we cited those cases. Moreover, what's really going on here is a notice function. And your argument is that your, they call it boilerplate, your one-line recitation in your answer of race judicata along with, I have to say, a fairly long laundry list of possibly irrelevant defenses is enough? Yes. Under the cases we cite, absolutely. I would also like to point out that it wasn't just that boilerplate, as they call it, allegation which has been held specifically to be sufficient. That is, the Ohio courts specifically rejected that contention. We also put it in our brief right after they filed that claim. We noted and Judge Sargas noted in his order, hey, the claim you're asserting now, which came out of the blue that you're entitled to share in the alleged antitrust conspiracy, sure sounds like it's part of the case in California and it ought to be. I saw that you noted it and I saw that the judge noted it, but what the judge said was they note it. Meaning, I'm not sure the judge agreed with you. The judge noted that you noted it. I'm not saying he missed, but it put them on notice is the point. You're asserting a race judicata before you really got a, before it's judicata. We did, Your Honor. We asserted it when we answered the counterclaim in Ohio before there was a judgment in either case. At that point, they had options. Frankly, when they filed the California action, they could have filed this acquisition sharing claim at the same time in California. I don't know why they didn't. When you answered, did you ever answer the, you must have answered the California complaint. We answered it before the counterclaim was asserted. That was my question. Before the counterclaim was, I see. Yes. So at the time that you gave your answer in the California antitrust claim, the basis for your race judicata defense had not been filed in Ohio. Correct, Your Honor. Okay. I would submit that in terms of the factors of when, where, who and what, our briefs clearly show the overlap of these cases. And I'm not going to belabor that unless the Court has questions. I really have, I think I've addressed everything. Unless you have questions. Thank you, counsel. Thank you. Thank you, counsel. Your adversary has saved 13 minutes for you. But you can't have all of them. I won't, Your Honor. I'll go last. How about two minutes? That's fine, Your Honor. Thank you. Let's start first with the concept of waiver. The case law is clear in the briefs that it is not enough to simply raise an objection. You must, and I quote, engage in conduct that facilitates it immediately. You must object at the earliest opportunity more than affirm a defense. It is not sufficient. You must do something, the case law says. So let's ask ourselves what they did. No, they didn't raise it in the answer in California. But they didn't raise it in the pretrial process either. No, they raised it in Ohio as an affirmative defense. But they didn't do anything about it for over a year. Now, Your Honor, the case law is clear. When you have parallel actions, you are not required. You are not required to only raise it once the judgment occurs. You've got to raise it when it's a possibility. That brings us to the mirror image, Your Honor. Let me simply say conspiracy, relevant market, market control, interstate commerce, not a single one of those issues that will occupy, as Your Honor knows, weeks and weeks of trial was even part of the Ohio case. There was a different measure of damages, and we've indicated the case law. One last point, Your Honor. There's not a word here about ongoing antitrust violations in Harkins. That survives no matter what because it's an ongoing antitrust violation. In summary, Your Honor, let me say this. The acquisition sharing agreement was violated even if the subject matter of the antitrust claims were violated even if there was never an acquisition sharing agreement. This Venn diagram does not overlap sufficiently to impose the very harsh remedy of res judicata. No matter how much we all might want to see this case go away, but you know, Your Honor, it's an ongoing antitrust conspiracy, and they're saying no more injunctions, that all this conduct is immunized until time immemorial. That is not the law. Okay. Thank you. Thank you, counsel, for both of you, and you've managed to make res judicata case interesting. Yeah, it was very interesting. The case of Central Garden and Pet Company v. Scott's Company is now submitted for decision. We are now in recess. We will reappear shortly. All rise. Court is in recess and adjourned.
judges: Canby, W. Fletcher, Tallman